Worthington vs. Tormey.

---

(Decided 21st February, 1871.)

---

EDWARD WORTHINGTON *vs.* LEONARD J. TORMEY.

*Evidence—Practice in the Court of Appeals—Objection to a Prayer—Purchase and Sale of Stock—Sufficiency of Notice of the sale of Stock by a Broker.*

In an action instituted in the Circuit Court for Baltimore County, a commission to take testimony was issued and duly executed and returned. Subsequently the cause was removed to the Superior Court of Baltimore City, and a transcript of the commission and return with the depositions taken thereunder, were transmitted to said Court. Afterward the cause was removed to the Circuit Court for Carroll County, and a transcript of said commission and depositions were sent to said Court. Upon a trial of the cause in the Circuit Court for Carroll County, it was HELD:

That the commission and return, with the depositions taken thereunder, formed a part of the proceedings in the cause, and a transcript thereof was admissible in evidence.

An objection to a prayer that there was not sufficient evidence to support it. will not be heard in the Court of Appeals, unless it appear that the objection was distinctly made to, and decided by the Court below.

Worthington *vs.* Tormey.

A stockbroker in the city of Baltimore, on the 9th of March, 1868, at the request of W, residing near Reisterstown, in Baltimore County, purchased two hundred shares of the Canton Company's Stock, through his agents, brokers in New York, at $64.50 a share, which did not exceed the price limited by W. At the time of the purchase, the brokers in New York were carrying on a margin for the broker in Baltimore, eight hundred shares of the same stock. On the day following the purchase notice thereof was sent through the mail addressed to W, at Reisterstown, his proper post office A few days afterward W called at the office of the broker and refused to recognise the purchase, but requested him to do nothing with the stock, until he, W, could see J. On the 17th of March, W in an interview with the broker repudiated the purchase, and on the same day, subsequently, the broker wrote to W notifying him that he would sell, without stating the place of sale, the shares of stock, on or after the 19th instant, unless a sufficient and satisfactory margin was deposited before that time. He at the same time stated that he was. prepared to deliver the shares of stock to W, or his order, upon a tender of the amount of the purchase money, commission and interest. This letter addressed to W at Reisterstown, was handed to the postmaster in Baltimore, who enclosed it to the postmaster at Reisterstown, stating that the writer requested that he would note its delivery to the person to whom it was addressed The letter reached Reisterstown on the following day, but was not received by W, until the 24th instant The stock was sold in New York at W's risk on the 21st instant at $46.00 per share. In an action against W, by the broker to recover the difference in the price of the stock and the amount at which it was sold. together with his commission and interest, it was HELD:

1st. That it was not necessary that the stock which was purchased for W, should have been kept separate from other stock of the Canton Company, which belonged to the broker, or that it should have been marked so as to designate it as belonging to W.

2d. That if the stock were bought for W, and the broker or his agents had it in possession so that it could be delivered to W, upon his paying what was due therefor, the broker had done all that was required of him, and he was entitled to be paid the price of the stock and his commission, whether he himself had paid for the stock or not.

3d That the letter of the 17th of March, addressed to W, at his proper post office. informing him that the stock would be sold after the 19th instant was a sufficient notice to bind him notwithstanding he was in the city of Baltimore on that day, and a personal notice might, by the exercise of reasonable diligence, have been served upon him.

In the case of a sale of stock by a bailee, it is not obligatory upon him to give notice to the bailor of the *place* of sale.

APPEAL from the Circuit Court for Carroll County.

This action brought by the appellee against the appellant, was instituted in the Circuit Court for Baltimore County, was removed upon the application of the plaintiff to the Superior Court of Baltimore City, and thence at the instance of the defendant, removed to the Circuit Court for Carroll County. The plaintiff who was a broker transacting business in the city of Baltimore, received from the defendant on the 9th of March, 1868, an order to purchase for him two hundred shares of stock of the Canton Company—a stock on the New York Stock Board—not to exceed $64.50 per share; in compliance with that order the plaintiff on the same day, telegraphed to Gray, Prince & Co., of New York, brokers, and bought the stock as directed. At the time of the purchase, Gray, Prince & Co., were carrying on a margin for the plaintiff, eight hundred shares of the same stock.

On the following day, notice of the purchase was sent by mail to the defendant, at Reisterstown, in Baltimore County, his proper post office. Some days afterward the defendant called at the office of the plaintiff and refused to recognize the transaction, but requested him to do nothing with the stock until he (the defendant) could see Edward F. Jenkins. The plaintiff held on to the stock until the 17th instant; on that day he met the defendant in Baltimore, who, according to the plaintiff's testimony, said " he would have nothing to do with the transaction," but in his own testimony stated that " nothing was said on the subject." Immediately after the interview the plaintiff went to his office and wrote to the defendant, notifying him that he would sell the stock, without naming the place of sale, on or after the 19th instant, unless the defendant deposited with him before that time sufficient and satisfactory margin ; the plaintiff also stated that he was prepared to deliver to the defendant, or his order, two hundred shares of Canton Company's stock, on the tender of the amount of the purchase money, commission and interest, and would hold the stock subject to his order, until the 19th inst.

This letter addressed to the defendant at Reisterstown, was handed to the postmaster in Baltimore, who enclosed it in an envelope directed to the postmaster at Reisterstown, stating that the writer requested that he would note its delivery to the person addressed. The letter reached Reisterstown on the following day, but was not received by the defendant until the 24th instant. In the absence of any response to the letter of the 17th instant, the plaintiff, on the 21st, sold the stock in New York, through Gray, Prince & Co., at $46 a share. The defendant was not known to Gray, Prince & Co., in the transaction ; they looked alone to the plaintiff for the losses. The plaintiff had in his possession on the 21st of March, two certificates of stock of the Canton Company, each for one hundred shares, ready to be delivered to the defendant.

This action was brought by the appellee to recover from the appellant the difference in the price of the stock, and the amount at which it was sold, together with his commission and interest.

*First Exception:* At the trial the plaintiff offered to read the evidence taken under a commission sent to New York, and properly executed and returned, and which was contained in the transcript of the record transmitted from the Superior Court ; to the reading of this evidence the defendant objected ; the Court overruled the objection and the defendant excepted.

*Second Exception:* The plaintiff offered the following prayers :

1. If the Jury shall find from the evidence, that the plaintiff was a stock broker in Baltimore, and that the defendant, on the 9th of March, 1868, authorized him to purchase on his account two hundred shares of Canton Company's stock, and shall find that the place where said stock was ordinarily bought and sold, was at the Stock Exchange in New York ; and shall further find, that the plaintiff therefrom actually purchased two hundred shares of said stock through his sub-agents, Messrs. Gray, Prince & Co , stock brokers in New

York, and at a price not exceeding the price limited by the defendant, and that the defendant did not supply the plaintiff with funds to make said purchase, and that the plaintiff had funds and credit with his sub-agents which were applied by them in making said purchase; and if they shall further find, that the defendant, on the next day after the purchase, was informed of said purchase, and that the plaintiff notified the defendant, on the 17th of March, 1868, by letter addressed to him at his proper post office, that he was ready to deliver to him two hundred shares of Canton stock, so purchased on his account, and that unless he came forward and paid for it, he, the plaintiff, on or after the 19th of March, 1868, would sell said stock at the risk and cost of the defendant; and they shall further find, that the plaintiff had ready for delivery to the defendant such stock, and that he did sell, on the 21st of March, 1868, at the public Stock Board in New York, two hundred shares of said stock, for and at the risk of said defendant, and that after applying the whole proceeds of said sale, there was a loss upon the said original purchase, which said loss the plaintiff did pay to his sub-agents, then the plaintiff is entitled to recover the amount of said loss, or difference in price, together with his reasonable commission for the purchase and the expenses of said re-sale.

2. That if the jury shall find, that the defendant resided near Reisterstown, in Baltimore county, and the plaintiff in Baltimore city, and that there was a daily mail from Baltimore to Reisterstown, which was the proper post office of the defendant, and that the plaintiff deposited in the post office in Baltimore, on the 17th of March, a letter containing the notice mentioned in the first prayer, then the said notice was sufficient, notwithstanding the fact, that it was not received by the defendant until the 24th of March, 1868, and after the sale.

3. If the jury shall find that the plaintiff made a purchase of two hundred shares of stock on account of the defendant, as stated in the first prayer; and shall further find, that the defendant had notice thereof on the day after the purchase, and

that he failed to call and pay for the same, and that on the 17th of March, 1868, he repudiated the purchase and refused to be bound thereby, then the plaintiff was at liberty, without further notice to him, to cause the stock to be sold at the defendant's risk, and to charge him with the loss on said re-sale.

The following prayers were offered by the defendant:

· 1. That if the jury find that the plaintiff, in 1868, was a stock broker, doing business in Baltimore city, and that on the 9th day of March, 1868, the defendant called at his office and directed him to buy two hundred shares of the stock of the Canton Company, at a price not exceeding $64.50 per share, and that the plaintiff in execution of said order, the same day telegraphed to Gray, Prince & Co., stock brokers, residing in New York city, directing them to buy two hundred shares of Canton stock, at a price not exceeding $64.50 per share, and that the same day they purchased that amount of Canton stock at the price named, and that said Gray, Prince & Co., at the time, had a large general account with said Tormey, buying and selling stock for him, and were carrying stock for him, including six hundred other shares of Canton stock, upon a margin of from 5 to 10 per cent., and that said two hundred shares of Canton stock was not set apart or designated for said defendant, but was carried by Gray, Prince & Co., for the plaintiff, as his other Canton stock was, and charged in said plaintiff's general account; and if they find that all the Canton stock so held by Gray, Prince & Co., including said two hundred shares, was sold by said Gray, Prince & Co., at the time and for the price named in the evidence of John D. Prince, and that said Gray, Prince & Co., the first of each month rendered accounts to said plaintiff of their dealings, and continued to do so until the 19th of November, 1868, when they had a final settlement with said plaintiff, and that no money was paid or advanced by said plaintiff, except what was paid as margins, from time to time, to protect said Gray, Prince & Co., to said Gray,

Prince & Co., and was applied and credited to the general account and credit of said plaintiff, then he cannot recover in this case.

2. That there is no evidence of any money having been paid by the plaintiff, prior to the institution of this suit, for or on account of the defendant, under circumstances which will entitle him to recover in this case.

3. That even if the jury find that on the 17th day of March, 1868, the plaintiff held two hundred shares of the stock of the Canton Company, which he had only purchased for the defendant and by his authority, and find that on that day plaintiff wrote the letter offered in evidence, dated 17th of March, 1868, and addressed it to the defendant at Reisterstown, and that plaintiff delivered said letter in person to the postmaster at Baltimore, on that day, informing him it was an important letter, and that he wished the postmaster at Reisterstown to note its delivery to the person addressed, and that in consequence of said directions said letter was enclosed in an envelope with the note to the Reisterstown postmaster, offered in evidence and mailed March 17th, 1868, and that according to the postmaster's custom, when important letters were received, the letter was not sent with the defendant's mail, but a message sent by some neighbor, that there was a letter at the office for him which he could not get unless he came and receipted for it. And if they find that defendant lived about sixteen miles from Baltimore city, and about four miles from Reisterstown, which was his post office, and that they have a daily mail at Reisterstown, and a letter mailed in Baltimore on the 17th would reach Reisterstown on the 18th of March; and if they find that the defendant sent very irregularly for his mail, sometimes at intervals of three or four days, and if they find that he did not in fact receive said letter until March 24th, 1868, and if they find said stock had been sold by said plaintiff on the 21st of March, 1868, then said sale was made without a reasonable and proper notice to the defendant, and the plaintiff cannot recover in this case.

4. That if the plaintiff was justified in treating the two hundred shares of Canton Stock as the defendant's, the notice sent him was an unreasonable and insufficient one.

5. That if the stock was bought by the plaintiff without authority of the defendant, or at a higher price than was named, there can be no recovery in this case.

6. That if the defendant authorized the plaintiff to purchase the stock, and in execution of the order the stock was purchased, it was the duty of the plaintiff to have notified the defendant of said purchase with all reasonable diligence, and without such notice defendant would not be bound to accept the stock.

7. If the jury find from the evidence that specific instructions were given by the defendant to the plaintiff on the 9th of March, 1868, that in the event of the purchase of the stock in the evidence mentioned, the plaintiff should immediately communicate the fact of purchase to the defendant, and informed the plaintiff where to send the notice; and if they shall further find that the said stock was purchased on the said 9th of March by the plaintiff, and that the plaintiff did not communicate the fact of purchase immediately to the defendant, according to the order and instructions of the defendant, then the defendant was not required to take said stock.

8. That it was the duty of the plaintiff to use all reasonable diligence to notify the defendant of his intention to sell said stock in time to enable him to protect himself, and the letter of March 17th would not be sufficient notice, if on the 17th, at the time the plaintiff formed the intention to sell, as afterwards, during that day, he knew the defendant was in Baltimore, and he could, by the exercise of reasonable diligence, have served notice on him personally on that day.

The Court granted the first and second prayers of the plaintiff, and rejected his third prayer, and granted the fifth and seventh prayers of the defendant, and rejected his first, second, third, fourth, sixth and eighth. The defendant excepted to the granting of the first and second prayers of the plaintiff

and to the rejection of his first, second, third, fourth, sixth and eighth prayers, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, ALVEY and ROBINSON, J.

*Richard J. Gittings* and *Arthur W. Machen,* for the appellant.

At the trial the plaintiff did not produce the original commission and depositions, nor a copy thereof, but offered to read from the *transcript* sent from the *Superior Court of Baltimore City,* what purported to represent said depositions, and notwithstanding the objection of the defendant, the Court allowed it. For this, there was no authority in law. The depositions formed no part of the record of proceedings in the cause, properly so called. The commission and depositions are collateral to the action—just as much so as if the commission had been issued out of the Court of Chancery in the exercise of the general jurisdiction in chancery. The statute, indeed, expressly puts the depositions so taken upon the footing of depositions obtained by the aid of a Court of Chancery. *Code, Art.* 37, *sec.* 15; 2 *Story Eq. Jur. sec.* 1513, *note: Attorney Gen. vs. Ray,* 2 *Hare,* 518.

The appellee never put himself in a *condition* to insist on holding the appellant responsible upon the alleged purchase of stock. Although an order was given to Gray, Prince & Co. to buy two hundred shares, not only were the latter not notified that the purchase was made on account of the appellant, but the appellee neither paid for them, nor had he such control of them as to be able at pleasure to deliver them to his principal. They were not unconditionally at his disposal, but were merely *carried* by Gray, Prince & Co. upon a *margin.* They in effect stood *pledged* to Gray, Prince & Co., to secure the liabilities assumed on the running account between them. To entitle the broker to insist, as against his

Worthington vs. Tormey.

principal, upon having bought the stock for him, he must show that it is in condition to be immediately transferred to the latter, without anything more being required to be done on his own part as between himself and third parties. *Rosenstock vs. Tormey*, 32 *Md.*, 169; *Bostock vs. Jardine*, 3 *Hurls. & C.*, 700.

The appellee could not sell without notice. And notice means *actual* and *personal* notice, and such notice as affords the principal a reasonable opportunity of intervening to prevent the sacrifice of his property. To allow any thing different would be to authorize "a breach of good faith and common honesty." *Ritter vs. Cushman*, 35 *How. Pr. R.*, 285; 7 *Robertson*, 294; *Milliken vs. Dehon*, 27 *N. Y.*, 3⁻0; *Brass vs. Worth*, 40 *Barb.*, 648; *Mallory vs. Lord*, 29 *Barb.*, 454; *Mackham vs. Jandon*, 41 *N. Y.*, 235, (2 *Hand.*); *Taylor vs. Ketchum*, 5 *Rob.*, *N. Y.*, 507.

In the present case, no notice at all was given. The letter which is relied on as having the effect of notice, was not received until the third day after the shares were disposed of. But had it been received at the earliest possible moment, the opportunity for putting up a margin after receipt thereby afforded to a gentleman residing in the country, sixteen or twenty miles off—a few hours at the utmost—would not have been reasonably ample even in a person in Baltimore, on the spot.

The letter, as a notice of sale, was defective in not giving time and place. *Genet vs. Howland*, 45 *Barb.*, 560; *Wilson vs. Sittle*, 2 *Comstock*, 44; *Stearns vs. Marsh*, 4 *Denio*, 231; *Lewis vs. Graham*, 4 *Abbott*, 106; *Dykers vs. Allen*, 7 *Hill*, 498; *Davis vs. Funk*, 39 *Penn.*, 250; *Richards vs. Davis*, 7 *Amer. Law Reg.*, 483; *Diller vs. Brubaker*, 52 *Penn.*, 498; *Stevens vs. Hurlbut Bank*, 31 *Conn.*, 146; *Washburn vs. Pond*, 2 *Allen*, 474; *Sitgreaves vs. Farmers & Mechanics' Bank*, 49 *Penn.*, 359.

*Orville Horwitz* and *William M. Merrick*, for the appellee.

GRASON, J., delivered the opinion of the Court.

The first exception was taken to the ruling of the Court below, by which it permitted the evidence, taken under the New York commission, to be read to the jury from the transcript of the record. The commission and return, with the evidence taken thereunder, formed part of the proceedings in the cause, and in transmitting the record, the clerk of the Court did right in also sending a transcript of them as part of the proceedings, and they were therefore admissible in evidence.

The second exception was taken to the granting of the first and second instructions of the appellee, and the rejection of the first, second, third, fourth, sixth and eighth prayers of the appellant. Two objections were urged to the first instruction—first, that there was no sufficient evidence of the readiness of the appellee to deliver the stock to the appellant, to authorize the Court to submit that question to the jury; and the second, that the notice to the appellant of the intended sale of the stock was insufficient.

1st. It does not appear that the first objection was taken to the prayer at the trial and decided by the Court below. The fourth rule of this Court, adopted under authority of the 18th section of the 4th Article of the Constitution, provides that this Court shall not deem an instruction defective because it has submitted a question of law to the jury, and that no question shall arise in this Court as to the insufficiency of evidence to support any instruction actually granted, unless it appear from the record that an objection on that ground was distinctly made to, and decided by, the Court below. The first objection to the first instruction comes too late, therefore, when made for the first time in this Court, it not appearing to have been made in the Court below. But even if it could now be entertained in this Court, we think that there was evidence on that point sufficient to be submitted to the consideration of the jury.

The appellee offered evidence tending to prove that he had, at the request of the appellant, purchased for him in the New

York stock market, on the 9th of March, 1868, through Gray, Prince & Co., agents of the appellee, two hundred shares of the stock of the Canton Company, at $64.50 per share, the price limited by the appellant, and that notice of the purchase was sent by mail to him the following day, to his post office in Baltimore county; that said shares of stock were kept in the possession of the agents of the appellee, in the city of New York, until the 21st day of March, when they were sold at the Stock Exchange in that city, for $46 per share, by direction of the appellee, for the purpose of satisfying the debt to him thus incurred. There was also proof to show that the appellee had in his possession, in the city of Baltimore, on the 21st day of March, two certificates of stock of the Canton Company, each for one hundred shares, ready to be delivered to the appellant. From this proof, the jury was at liberty to find that the appellee was ready to deliver to the appellant the two hundred shares of Canton stock, and they did in fact so find. It was not necessary that the stock, which was purchased for the appellant, should have been kept separate and apart from other stock of the Canton Company which belonged to the appellee, or that it should have been marked so as to designate it as belonging to the appellant. If the appellee bought the stock for the appellant, and either he or his agents had it in possession, so that it could be delivered to the appellant upon his paying what was owing for it, everything that was required of the appellee had been done, and he was entitled to be paid the price of the stock and his commission.

2d. The other objection to this instruction (and it was also urged to the second,) is, that the notice to the appellant of the sale of the stock at his risk was insufficient, and therefore, that the appellee had no right to make the sale. There was testimony before the jury tending to prove that, on the 13th of March, the appellant requested the appellee to do nothing with the stock until he could see Mr. Jenkins, and that on

the 17th of March, the appellant told the appellee in Baltimore that he repudiated the transaction, and would have nothing to do with the stock. The appellee then wrote the letter dated the 17th of March, 1868, which is set out in the record, addressed to the appellant at Reisterstown, Baltimore county, it being the post office of the appellant, and handed it to the postmaster at Baltimore, and stated to him that it was of great importance to the writer, and requested the postmaster to see that it was delivered to the person to whom it was addressed. The postmaster sent it under cover to the postmaster at Reisterstown by mail, stating that the writer requested that he would note its delivery to the person to whom it was addressed. The letter reached Reisterstown on the 18th, and was delivered to the appellant on the 24th of March, three days after the sale of the stock had taken place. A notice of the dishonor of a promissory note, sent by mail to the indorser at his post office, will bind him, although he never receives it; and we can see no reason why a notice sent to a bailor in the same way, to inform him of a sale of his pledge, consisting of stocks of this description, should not be a sufficient notice to bind him also. The notice in this case was handed to the postmaster, with the request that he would see that it was delivered to the person to whom it was addressed. This manner of having the notice sent, was adopted out of abundant caution, and, no doubt, with the best motives. The party to whom it was intrusted, was an officer of the government, whose especial duty it was to see that all letters mailed in Baltimore should be sent with despatch, and this letter did in fact reach Reisterstown on the 18th of March, the day after it was mailed.

It could not have arrived at that place any sooner, if it had been put into the post office by the appellant and sent off without being inclosed in a letter to the postmaster at Reisterstown. It does not appear in the proof, that the appellant either sent, or went himself to his post office for his mail be-

tween the 18th and 24th of March, or that he was an hour later in receiving this notice, by reason of its having been sent under cover to the postmaster at Reisterstown. We, therefore, are of opinion, that there is no force in the objection urged to the manner of sending the notice. But it was also contended, that it was insufficient by reason of its not naming the *place* where the stock would be sold. There was evidence tending to prove that Canton stock was for sale only at the New York Stock Board, and that the appellant had knowledge of that fact, and, therefore, it was not necessary to name the *place* of sale in the notice, even if, in the sales of other kinds of stocks held in pledge, it is necessary to do so. But we think, that in the case of sales of stock by bailees, it is not obligatory upon them to give notice to the bailors of the *place* of sale. In cases of sales of some kinds of pledges, such as heir-looms, plate, and other articles of like character and description, which possess a peculiar value to the owner, or which cannot readily be replaced, it is right and necessary to give notice to the bailor of both the time and place of sale, in order that he may have an opportunity of redeeming his pledge, or attending the sale and protecting his interests. But the same reason does not apply to cases of sales of stocks. One share is exactly similar to, and of the same value as another of the same company, and can be purchased easily and readily if desirable. For these reasons, we think that the first and second instructions were correct.

The views we have already expressed with regard to the notice of the sale, are sufficient to show that the third and fourth prayers of the appellant were properly rejected. The first prayer denied the appellee's right to recover, unless the jury should find that the stock was purchased and set apart, or designated for the appellant, and that the appellee actually paid the money for it; and the second prayer asks the Court to instruct the jury that there was no evidence of such payment, prior to the institution of the suit, as was sufficient to entitle the appellant to recover. We have already shown

that it was not necessary that the stock, which was purchased for the appellant, should have been marked in his name or otherwise designated or set apart for him, but that it was only necessary that it should have been in the possession of the appellee or his agents, ready for delivery. Nor was it necessary that the appellee should have actually paid the money for the stock to enable him to recover from the appellant. If he had funds or credit with his agents, through whom the purchase was made, and they made the purchase upon his credit and held him liable for the price, and charged him with it in their account with him, he was entitled to maintain his action against, and to recover from, the appellant. There was no error, therefore, in rejecting the appellant's first and second prayers.

The instruction asked by his sixth prayer had already been granted substantially in the instructions granted at the appellee's instance, and, therefore, the refusal to grant the instruction asked, forms no ground for the reversal of the judgment.

The eighth prayer stated, as a proposition of law, that if the appellee knew that the appellant was in the city of Baltimore on the 17th day of March, at the time the appellee formed the intention to sell the Canton stock, and afterwards during that day, it was his duty to serve the notice of the intended sale upon him personally, if he could have so served it by the exercise of reasonable diligence. The proof in the cause shows, that the parties met in Baltimore on the 17th of March, and had some conversation, and that the appellee went to his office and wrote the letter of the 17th of March, and then tried to find the appellant, but without success. There is no proof in the record to show that the appellee knew that the appellant remained in the city of Baltimore after the time when they met on the corner of the street, where the conversation between them took place, or that he did in fact remain in the city after that time. But even if the appellee had knowledge that the appellant was visiting

the city that day, he was not compelled to serve a personal notice upon him then. *Hysinger vs. Baltzell*, 3 *G. & J.*, 163. This prayer was also properly rejected. We concur in the rulings of the Court below, and its judgment will be affirmed.

*Judgment affirmed.*

(Decided 23d February, 1871.)

